UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CRC INVESTMENTS, LLC | ) | Case No. 21-50307 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

## MOTION BY PORTFOLIO HOLDINGS IV-NC, LLC FOR RELIEF FROM THE AUTOMATIC STAY

NOW COMES Portfolio Holdings IV-NC, LLC ("Portfolio Holdings"), a secured creditor of the Debtor, through counsel, and moves for relief from the automatic stay pursuant to Section 362(d)(2) of the Bankruptcy Code, and in support hereof, shows the Court as follows:

1.      The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on May 6, 2021.

2.      The Debtor owns and operates a small inn called the Pine Crest Inn in Polk County, North Carolina.

3.      Portfolio Holdings is a secured creditor of the Debtor, holding a first priority deed of trust against the Debtor's real estate asset(s).  As reflected in the proof of claim filed by Portfolio Holdings in this case, Portfolio is owed the amount of $1,117,817.49 pursuant to the terms of a promissory note and settlement agreement executed by the parties.  Such indebtedness is secured by a first priority deed of trust against the Debtor's real property where the Pine Crest Inn is located.  Said deed of trust was duly recorded at Book 298, Page 302 of the Office of the Register of Deed of Polk County.  A true and accurate copy of Portfolio Holding's filed proof of claim (with exhibits) is attached hereto as **Exhibit A** and incorporated herein by reference.

4.      Upon information and belief, the IRS holds a second priority lien against the Real Property in the approximate outstanding amount of $650,472.35.  The Town of Tryon is also owed approximately $30,060.80 for past due ad valorem taxes.  The SBA does not hold a lien against the Real Property, but appears to hold a blanket lien against all of the Debtor's personal property.  The SBA filed a secured proof of claim in the amount of $130,176.88

5.      On June 16, 2022, this Court entered an Order [DOC# 204] confirming the Debtor's Amended Plan of Liquidation.  The confirmed plan (the "Plan") provided that the Debtor would list and market the Debtor's business (including the Real Property) for

sale through September 30, 2022, and that if no sale was consummated by that date, then the Debtor would attempt to auction the Debtor's business on or before December 2022. The Debtor's marketing efforts met with little or no success. Accordingly, the Debtor hired an auctioneer to auction the business. An auction sale was held on December 8, 2022. A reserve price of $2,000,000 was set for the auction. Upon information and belief, the high bid at auction for the Debtor's business was only $1,300,000, well below the agreed reserve price.

6.     The Plan states that should the auction sale not close on of before December 31, 2022, then the Debtor shall be in default of the Plan.

7.     Pursuant to Section 362(d)(1) of the Bankruptcy Code, a Court shall lift the automatic stay for "cause." Cause exists to lift the automatic stay in this instance. The Debtor has marketed its business for sale and has also held an auction sale. Although time consuming, neither of those endeavors resulted in the Debtor receiving a purchase offer that would come close to satisfying the secured claims of Portfolio Holdings and the IRS. The market has spoken and has demonstrated that the Debtor's business is not worth a sufficient value to satisfy those debts in full, let alone the claims of other creditors in this case.

8.     Pursuant to Section 362(d)(2) of the Bankruptcy Code, a Court shall lift the automatic stay if the Debtor holds no equity in the Real Property and the Real Property is not necessary for an effective reorganization of the Debtor. The Debtor's past efforts to market and sell the Debtor's business, coupled with the recent auction sale, demonstrate unequivocally that the Debtor holds no equity in its business or the Real Property. Similarly, inasmuch as the Debtor was willing to part with the Real Property as part of its confirmed Plan, the Real Property is not necessary for an effective reorganization by the Debtor.

9.     Relief from the automatic stay is warranted and appropriate pursuant to both 11 U.S.C. § 362(d)(1) and (2).

WHEREFORE, Portfolio Holdings respectfully requests that this Court enter an Order modifying and lifting the automatic stay of 11 U.S.C. § 362(d) so as to allow Portfolio Holdings to foreclose the Real Property pursuant to the terms of its Deed of Trust and other loan documents and as provided by applicable nonbankruptcy law, and that the Court grant Portfolio Holdings such other relief as this Court deems appropriate and just.

Respectfully submitted, this the 14th day of December, 2022.

/s/ Daniel C. Bruton
Daniel C. Bruton
NC Bar No. 22440
Attorney for Portfolio Holdings IV-NC, LLC
Bell Davis & Pitt, PA
PO Box 21029
Winston-Salem, NC 27120-1029
Telephone:  336-722-3700

**Fill in this information to identify the case:**

Debtor 1   CRC Investments, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Middle District of North Carolina**

Case number:  **21-50307**

**FILED**

**U.S. Bankruptcy Court**
**Middle District of North Carolina**

7/13/2021

**Reid Wilcox, Clerk**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:** | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**

Potfolio Holdings IV–NC, LLC

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Potfolio Holdings IV–NC, LLC

Name

c/o Daniel C. Bruton
Bell Davis & Pitt, PA
PO Box 21029
Winston Salem, NC 27120–1029

Contact phone   336–722–3700

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

Where should payments to the creditor be sent? (if different)

Name

Contact phone

Contact email

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

EXHIBIT
tabbies

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$     1117817.49

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

        Money Loaned

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.
   **Nature of property:**
   ☑ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
   ☐ Motor vehicle
   ☐ Other. Describe: _____

   **Basis for perfection:**        Deed of Trust

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:**            $     2000000.00

   **Amount of the claim that is secured:**   $     2000000.00

   **Amount of the claim that is unsecured:**   $     0.00     (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:**   $     1117817.49

   **Annual Interest Rate** (when case was filed)     0     %

   ☑ Fixed
   ☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies  $ _____

* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    7/13/2021
                    MM / DD / YYYY

/s/  Daniel C. Bruton

Signature

Print the name of the person who is completing and signing this claim:

| Name | Daniel C. Bruton |
|---|---|
| | First name    Middle name    Last name |
| Title | Attorney for Portfolio Holdings IV−NC, LLC |
| Company | Bell Davis & Pitt, PA |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | PO Box 21029 |
| | Number   Street |
| | Winston Salem, NC 27120−1029 |
| | City   State   ZIP Code |
| Contact phone | 336−722−3700       Email   dbruton@belldavispitt.com |

<u>Portfolio Holdings IV-NC, LLC Payoff</u>

<u>Payoff as of 5/6/21</u>

| | |
|---|---|
| Principal: | $1,100,000.00 |
| Attorney Fees/Expenses (foreclosure): | $   17,817.49 |
| | $1,117,817.49 |

Case 21-50307   Doc 249   Filed 12/14/22   Page 8 of 35

# FORBEARANCE AGREEMENT

THIS AGREEMENT ("Agreement") made effective as of the date of the final signature on this Agreement, by and between Portfolio Holdings IV-NC, LLC ("Portfolio") and CRC Investments, LLC ("CRC").

WHEREAS, CRC is obligated and indebted to Portfolio pursuant to that certain Promissory Note dated April 30, 2003, in the original principal amount of $1,312,500.00 (the "Note");

WHEREAS, the Note is secured by a Deed of Trust dated April 30, 2003, and recorded in Book 298 at Page 302, Polk County Registry (the "Deed of Trust"), encumbering real property located in Polk County, North Carolina more particularly described therein and generally known as the Pine Crest Inn (the "Real Property");

WHEREAS, Portfolio is the current holder of the Note and beneficiary under the Deed of Trust;

WHEREAS, The Note has matured, but CRC has not paid the Note;

WHEREAS, Portfolio and CRC, and other parties are concurrently entering into a Settlement Agreement and General Release of All Claims ("Settlement Agreement"), to be executed contemporaneously with this Agreement, whereby the parties will settle multiple issues between them;

WHEREAS, the Settlement Agreement, among others things, requires a total Settlement Payment in the amount of $1,764,000.00 payable in two installments, with the second installment being made to Portfolio in the amount of One Million One Hundred Thousand and 00/100 Dollars ($1,100,000.00) on the Note, as additionally described in the Settlement Agreement; and

WHEREAS, pursuant to that Settlement Agreement, the parties have agreed that (1) that Portfolio will forbear from exercising certain remedies available to Portfolio under the Note and Deed and Trust; and (2) that Portfolio will allow CRC to pay off the Note in the manner and in the amount set forth below.

NOW THEREFORE, in consideration of Portfolio granting CRC the opportunity to payoff Note as set forth in numbered paragraph 1 hereinbelow, and in further consideration of the mutual covenants and agreements contained herein, in the Settlement Agreement, and in the Note and the Deed of Trust, the parties, intending to be legally bound hereby, agree as follows:

1.      CRC agree to pay, and Portfolio agrees to accept, in full and final satisfaction of the Note, the total sum of One Million One Hundred Thousand and 00/100 Dollars ($1,100,000.00) (the "Forbearance Payment"), to be paid on or before eighteen (18) months after the above-stated effective date of this Agreement. Specifically, the Forbearance Payment will be

made before eighteen (18) months if the property securing it, namely the Pine Crest Inn, is sold before that time.

2.    Portfolio agrees and represents that pursuant to this Forbearance Agreement and the Settlement Agreement, the maximum balance that it is now entitled to collect under and pursuant to the Note, Deed of Trust, and this Forbearance Agreement is the amount of the Forbearance Payment.  Portfolio further agrees and represents that it will cancel the Note and Deed of Trust upon receipt of the amount of the Forbearance Payment.

3.    Portfolio's agreement to forbear is expressly conditioned upon the following agreements and obligations of CRC:

(a)    Upon a reasonable amount of time from execution hereof, CRC shall provide copies of a certificate of insurance and the declaration pages for property casualty insurance covering the Real Property in a coverage amount at least the appraised value of the Real Property in the most recent appraisal, which shall name Portfolio as an additional insured and loss payee, and shall further maintain such property casualty insurance for the Real Property, with Portfolio as additional insured and loss payee for the duration of this Agreement; and

(b)    CRC shall timely pay all real property taxes for the Real Property.

4.    Portfolio and CRC agree that so long as CRC makes the Forbearance Payment on time and in full, and further complies with the conditions referenced in numbered paragraph 3 above, Portfolio will not, solely by reason of the existence on this date of the non-payment of the Note, pursue any remedy available to it under the Note, the Deed of Trust or North Carolina law. Upon any event of default of this Agreement – which shall include failure to make the Forbearance Payment on time or in full, failure to provide proof of and maintain casualty insurance for the Real Property or failure to timely pay any real property taxes for the Real Property, Portfolio shall be entitled to exercise any and all rights available to it against CRC under the Note, the Deed of Trust, this Forbearance Agreement, and applicable law, provided, however, the total balance due under the Note that Portfolio shall be entitled to recover is limited to the total amount of the Forbearance Payment, in addition to attorney fees and costs allowed by the Settlement Agreement in connection with foreclosure under the Deed of Trust.  Portfolio agrees that it will not pursue remedies against parties other than CRC for breach of this Forbearance Agreement.

5.    CRC acknowledges and agrees that the Note and the Deed of Trust are valid, legally binding documents against CRC, enforceable in accordance with their respective terms.

6.    Portfolio agrees that it will not sell or otherwise transfer the Note to any other person or entity for as long as CRC makes the Forbearance Payment referenced above.

7.    CRC acknowledges and agrees that CRC has not filed a bankruptcy petition in the past wherein CRC's liability under the Note or Deed of Trust was discharged.

8.      This Agreement is binding on the successors in interest to and assigns of the CRC and Portfolio.

9.      This Agreement shall be governed by and construed in accordance with the laws of the state of North Carolina.

10.     No term or provision of this Agreement shall be deemed waived and no breach excused unless such waiver or consent is in writing and signed by the party claimed to have waived or consented.  A waiver by either party of a breach of any term or provision hereof shall not be deemed a waiver of any succeeding or other breach of the same or other terms or provisions.

11.     This Agreement and the Settlement Agreement constitute the entire agreement between CRC and Portfolio and supersede all proposals, oral and written, and all other communications between CRC and Portfolio in relation to the subject matter of this Agreement. No change to or amendment of this Agreement shall be effective unless in writing and signed by CRC and Portfolio.

12.     **Time is expressly of the essence of this Agreement with respect to the performance of each obligation described in this Agreement**.

13.     Except as specifically modified by this Agreement, the Note and the Deed of Trust remain in full force and effect and are fully incorporated herein by reference for all their terms, provisions, and conditions.

14.     This Agreement may be signed in multiple counterparts which shall, when signed by CRC and Portfolio, constitute one binding agreement.  By executing this Agreement, CRC specifically acknowledges that CRC has carefully read all of the terms, provisions, and conditions of this Agreement and acknowledge receipt of a copy hereof on the date of the execution hereof.

*[signature pages follow]*

IN WITNESS WHEREOF, CRC and Portfolio have caused this Agreement to be executed as of the date of the final signature on this Agreement.

CRC INVESTMENTS, LLC

By: _Carl Caudle Jr_

Name: Carl Caudle, Jr.
Title: Member/Manager

STATE OF _North Carolina_
COUNTY OF _Henderson_

Signed and sworn to (or affirmed) before me this day and in the capacity indicated by

_Carl Ray Caudle Jr._

Date: _2 - 11 - 2019_

_Leigh Ann Faires_
Official Signature of Notary

_Leigh Ann Faires_
Notary's printed or typed name, Notary Public

My commission expires: _Dec. 7, 2023_

(Official Seal)

LEIGH ANN FAIRES
NOTARY PUBLIC
HENDERSON COUNTY, NC

PORTFOLIO HOLDINGS IV-NC, LLC

By: _Sarah A. Huff_
Name: Sarah Ann Huff
Title: Member/Manager

STATE OF _FL_
COUNTY OF _Indian River_

Signed and sworn to (or affirmed) before me this day and in the capacity indicated by

_Sarah Ann Huff_

Date: _3-21-19_

_Justin Metz_
Official Signature of Notary

_Justin Metz_
Notary's printed or typed name, Notary Public

My commission expires: _Apr 4, 2022_

(Official Seal)

JUSTIN R. METZ
MY COMMISSION EXPIRES
APRIL 4, 2022
#GG 203597
Bonded thru
Notary Public Underwriters
NOTARY PUBLIC, STATE OF FLORIDA

4

```
Doc ID: 004808580002 Type: CRP
Recorded: 05/20/2014 at 11:12:32 AM
Fee Amt: $26.00 Page 1 of 2
Polk, NC
Sheila Whitmire Register of Deeds
BK406  PG1134-1135
```

*Drawn by and mail
after recording to:
Stephen D. Poe, Esq.
P. O. Box 21029
Winston-Salem, NC 27120-1209*

## ASSIGNMENT OF DEED OF TRUST AND NOTE

THIS ASSIGNMENT OF DEED OF TRUST AND NOTE (this "**Assignment**"), dated as of May 19th, 2014, by BANK OF AMERICA, N.A., a national banking association ("**Assignor**"), to PORTFOLIO HOLDINGS IV-NC, LLC, a North Carolina limited liability company ("**Assignee**").

### WITNESSETH:

WHEREAS, CRC Investments, LLC ("**Borrower**") executed that certain Promissory Note dated April 30, 2003 in favor of Assignor in the original principal amount of $1,312,500.00 and having a maturity date of June 30, 2023 (the "**Note**"); and

WHEREAS, the Note is secured by a Deed of Trust dated April 30, 2003 from CRC Investments, LLC for the benefit of Assignor and recorded in Book 298, Page 302, Register of Deeds for Polk County, North Carolina (the "**Deed of Trust**", together with the Note, the "**Loan Documents**"); and

NOW, THEREFORE, in consideration of the sum of One Dollar ($1.00), and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby covenant and agree as follows:

Assignor hereby transfers, assigns, grants and conveys to Assignee all of Assignor's interest in the Deed of Trust and the other Loan Documents WITHOUT RECOURSE, ON AN "AS-IS, WHERE-IS" BASIS AND WITHOUT ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, except as otherwise provided in that certain Note Sale and Assignment Agreement of even date herewith, and by these presents hereby confirms such transfer, assignment, grant and conveyance.

IN WITNESS WHEREOF, Assignor has caused this Assignment of Deed of Trust and Note to be executed as of the date and year above first written.

ASSIGNOR:

BANK OF AMERICA, N.A.

By: _____

Print Name: _Roger Hamilton_

Title: _S VP_

*************************************************

STATE OF _NORTH CAROLINA_

COUNTY OF _Mecklenburg_

I certify that _Roger Hamilton_ personally appeared before me this day and acknowledged that (s)he is the _Sr. Vice President_ of BANK OF AMERICA, N.A., a national banking association, and that (s)he, in such capacity, being authorized to do so, voluntarily signed the foregoing on behalf of the bank for the purposes stated therein.

Date: _May 16th 2014_

By: _____

Print Name: _Emmanuelle C Borel_

Notary Public

[SEAL OR STAMP]

My Commission Expires:

_July 26 2017_

EMMANUELLE C. BOREL
NOTARY PUBLIC
CABARRUS CO., NC
MY COMMISSION EXPIRES
JULY 26, 2017

Case# 21-50307   Case 21-50307   Doc 249   Filed 12/14/22   Page 14 of 35   Page 8 of 28
Case# 21-50307   Claim# 3-1 Part 2   Desc Attachment 1   Filed 07/13/21   Page 8 of 28

APR 30 2003 14:24 FR COMML LOAN SVC CTR   704 388 0244 TO 919288599132   P.02/04

**Bank of America**

# PROMISSORY NOTE

| Borrower: | CRC Investments, LLC<br>3441 Kennebuck Court<br>Raleigh, NC 27613 | Lender: | Bank of America, N.A.<br>CCS-Small Business/Premier<br>NC1-014-13-07<br>200 South College Street, 13th Floor<br>Charlotte, NC 28255 |
|---|---|---|---|

**Principal Amount: $1,312,500.00**                                    **Date of Note: April 30, 2003**

**PROMISE TO PAY.** CRC Investments, LLC ("Borrower") promises to pay to Bank of America, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Three Hundred Twelve Thousand Five Hundred & 00/100 Dollars ($1,312,500.00), together with interest on the unpaid principal balance from April 30, 2003, until paid in full.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule:  3 monthly consecutive interest payments, beginning May 30, 2003, with interest calculated on the unpaid principal balances at an interest rate of 5.990% per annum; and 239 monthly consecutive principal and interest payments of $9,463.39 each, beginning August 30, 2003, with interest calculated on the unpaid principal balances at an interest rate of 5.990% per annum.  Borrower's final payment will be due on June 30, 2023 and will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT PENALTY.** Upon prepayment of this Note, Lender is entitled to the following prepayment penalty:  If the original principal amount of this Note is greater than $500,000.00, Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default.) Unless prohibited by law, Borrower agrees to pay a prepayment fee if this Note is paid in full before its fifth anniversary date. The fee shall be in the amount of one percent of the original principal amount of the Note.  Borrower agrees to pay the Prepayment Fee even if the prepayment is made following Lender's acceleration of this Note due to a default by Borrower, or by reason of any transfer giving Lender the right to accelerate the maturity of this Note. No prepayment fee will be assessed after five years.  Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bank of America, N.A., NC1-014-13-07, P.O. Box 30120 Charlotte, NC 28254-3693.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 4.000% of the unpaid portion of the regularly scheduled payment.  This late charge shall be paid to Lender by Borrower to compensate Lender for Lender's extra costs and expenses caused by the late payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note 6.000 percentage points.  The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or

APR 30 2003 14:25 FR COMML LOAN SVC CTR   704 388 0244 TO 918288599132   P.03/04

**PROMISSORY NOTE**
(Continued)

Loan No: 01-1141216 KSB                                                                 Page 2

performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of North Carolina. This Note has been accepted by Lender in the State of North Carolina.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of any County, State of North Carolina.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

ARBITRATION. (a) This paragraph concerns the resolution of any controversies or claims between the parties, whether arising in contract, tort or by statute, including but not limited to controversies or claims that arise out of or relate to: (i) this agreement (including any renewals, extensions or modifications); or (ii) any document related to this agreement (collectively a "Claim"). For the purpose of this arbitration provision only, the term "parties" shall include any parent corporation, subsidiary or affiliate of the Bank involved in the servicing, management or administration of any obligation described or evidenced by this agreement.

(b) At the request of any party to this agreement, any Claim shall be resolved by binding arbitration in accordance with the Federal Arbitration Act (Title 9, U. S. Code) (the "Act"). The Act will apply even though this agreement provides that it is governed by the law of a specified state.

(c) Arbitration proceedings will be determined in accordance with the Act, the applicable rules and procedures for the arbitration of disputes of JAMS or any successor thereof ("JAMS"), and the terms of this paragraph. In the event of any inconsistency, the terms of this paragraph shall control.

(d) The arbitration shall be administered by JAMS and conducted, unless otherwise required by law, in any U. S. state where real or tangible personal property collateral for this credit is located or if there is no such collateral, in the state specified in the governing law section of this agreement. All Claims shall be determined by one arbitrator; however, if Claims exceed $5,000,000, upon the request of any party, the Claims shall be decided by three arbitrators. All arbitration hearings shall commence within 90 days of the demand for arbitration and close within 90 days of commencement and the award of the arbitrator(s) shall be issued within 30 days of the close of the hearing. However, the arbitrator(s), upon a showing of good cause, may extend the commencement of the hearing for up to an additional 60 days. The arbitrator(s) shall provide a concise written statement of reasons for the award. The arbitration award may be submitted to any court having jurisdiction to be confirmed and enforced.

(e) The arbitrator(s) will have the authority to decide whether any Claim is barred by the statute of limitations and, if so, to dismiss the arbitration on that basis. For purposes of the application of the statute of limitations, the service on JAMS under applicable JAMS rules of a notice of Claim is the equivalent of the filing of a lawsuit. Any dispute concerning this arbitration provision or whether a Claim is arbitrable shall be determined by the arbitrator(s). The arbitrator(s) shall have the power to award legal fees pursuant to the terms of this agreement.

(f) This paragraph does not limit the right of any party to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or nonjudicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights, or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies.

(g) The filing of a court action is not intended to constitute a waiver of the right of any party, including the suing party, thereafter to require submittal of the Claim to arbitration.

ADDITIONAL DEFAULTS.

Each of the following shall constitute an additional event of default ("Event of Default") under this Note:

Event of Default Under Related Documents. A default or additional event of default occurs under the terms of any promissory note, guaranty, pledge agreement, security agreement or other agreement or instrument executed by Borrower or any guarantor, pledgor, accommodation party or other obligor in connection with or relating to this Note.

Judgment. The entry of a judgment against any Borrower or guarantor, pledgor, accommodation party or other obligor which Lender deems to be of a material nature, in Lender's sole discretion.

Adverse Change of Obligor. A material adverse change occurs in the financial condition of any guarantor, pledgor, accommodation party or other obligor, as determined by Lender in its sole discretion.

Resignation/Withdrawal. The resignation or withdrawal of any partner or a material owner of Borrower or any guarantor, pledgor, accommodation party or other obligor or any substantial change in the present executive or management personnel of Borrower, any guarantor, pledgor, accommodation party or other obligor, as determined by Lender in its sole discretion.

ASSIGNMENT. Lender may sell or offer to sell this Note, together with any and all documents guaranteeing, securing or executed in connection with this Note, to one or more assignees without notice to or consent of Borrower. Lender is hereby authorized to share any information it has pertaining to the loan evidenced by this Note, including without limitation credit information on the undersigned, any of its principals, or any guarantors of this Note, to any such assignee or prospective assignee.

COUNTERPARTS. This Note may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

PRE BILLING. If the Borrower and Lender elect to use pre-billing calculation, for each payment date (the "Due Date") the amount of each payment debit will be determined as follows: On the "Billing Date" Lender will prepare and mail to Borrower an invoice of the amounts that will be due on that Due Date ("Billed Amount"). (The "Billing Date" will be a date that is a specified number of calendar days prior to the Due Date.

APR 30 2003 14:25 FR COMML LOAN SVC CTR    704 388 0244 TO 918288599132    P.04/04

## PROMISSORY NOTE
(Continued)

Loan No: 01-1141216 KSB                                                      Page 3

which number of days will be mutually agreed from time to time by Lender and Borrower.) The calculation of the Billed Amount will be made on the assumption that no new extensions of credit or payments will be made between the Billing Date and the Due Date, and that there will be no changes in the applicable interest rate. On the Due Date Lender will debit the Designated Account for the Billed Amount, regardless of the actual amount due on that date ("Accrued Amount"). If the Due Date does not fall on a Business Day, Lender shall debit the Designated Account on the first Business Day following the Due Date. For purposes of this Agreement, "Business Day" means a day other than Saturday, Sunday or other day on which commercial banks are authorized to close or are in fact closed in the state where the Lender's lending office is located. If the Billed Amount debited to the Designated Account differs from the Accrued Amount, the difference will be treated as follows: If the Billed Amount is less than the Accrued Amount, the Billed Amount for the following Due Date will be increased by the amount of the underpayment. Borrower will not be in default by reason of any such underpayment. If the Billed Amount is more than the Accrued Amount, the Billed Amount for the following Due Date will be decreased by the amount of the overpayment. Regardless of any such difference, interest will continue to accrue based on the actual amount of principal outstanding without compounding. Lender will not pay interest on any overpayment.

**AUTOMATIC PAYMENTS.** Borrower hereby authorizes Lender automatically to deduct from Borrower's account numbered_____ the amount of any loan payment. If the funds in the account are insufficient to cover any payment, Lender shall not be obligated to advance funds to cover the payment. At any time and for any reason, Borrower or Lender may voluntarily terminate Automatic Payments.

**TERMINATION OF AUTOMATIC PAYMENTS.** In the event that Borrower terminates the Automatic Payment arrangement with Lender, Borrower agrees that the interest rate under the Note will increase, at the discretion of the Lender, by one percentage point (1.00%) per annum over the rate of interest stated in the Note, and the amount of each interest installment will be increased accordingly. The effective rate of interest under the Note shall not in any event exceed the maximum rate permitted by law.

**ADDRESS FOR NOTICES.** Any notice required to be given under this Note shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Note and if to Lender at the address set forth below. Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers. Notwithstanding anything to the contrary herein, all notices and communications to the Lender shall be directed to the following address:

> Bank of America, N.A.
> Charlotte CCS - Attn: Notice Desk
> 200 South College, 13th Floor
> Charlotte, NC 28255.

**FINANCIAL INFORMATION FROM BORROWER.** The Borrower shall provide, or cause to be provided, to Lender the following financial information and statements in form and content acceptable to Lender in its sole discretion as indicated below: Within 120 days of the Borrower's fiscal year end, the Borrower's annual financial statements. Such additional financial information regarding Borrower or any guarantor, pledgor, accommodation party or other obligor with respect to the loan as Lender shall request. The financial statements required above shall, in the case of the annual financial statements, be reviewed by a certified public accountant or better, satisfactory to Lender, as required by Lender, subject only to such qualifications as may be acceptable to Lender in its sole discretion, and in the case of all other financial statements, shall be certified as true and correct by a duly authorized officer of the Borrower.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

CRC INVESTMENTS, LLC

By: _____
    Carl R. Caudle, Jr., Member of CRC Investments,
    LLC

** TOTAL PAGE.04 **

ALLONGE TO THAT CERTAIN PROMISSORY NOTE IN THE
ORIGINAL PRINCIPAL AMOUNT OF $1,312,500.00, DATED
APRIL 30, 2003, EXECUTED BY CRC INVESTMENTS, LLC,
AS MAKER, IN FAVOR OF BANK OF AMERICA, N.A.

Pay to the order of PORTFOLIO HOLDINGS IV-NC, LLC, a North Carolina limited liability
company, AS IS, WHERE IS, WITH ALL FAULTS, without recourse, representation or warranty,
express or implied, except as may be set forth in that certain Note Sale and Assignment Agreement
of even date herewith.

This 19th day of May, 2014.

BANK OF AMERICA, N.A.

By: _____

Name: _____ Roger Hamilton

Title: _____

************************************************

STATE OF NORTH CAROLINA

COUNTY OF Mecklenburg

    I certify that Roger Hamilton personally appeared before me this day and
acknowledged that (s)he is the Sr. Vice President of BANK OF AMERICA, N.A., a national
banking association, and that (s)he, in such capacity, being authorized to do so, voluntarily signed the
foregoing on behalf of the bank for the purposes stated therein.

Date: May 16th 2014

By: _____

Print Name: Emmanuelle C Borel

Notary Public

[SEAL OR STAMP]

My Commission Expires: July 26 2017

EMMANUELLE C. BOREL
NOTARY PUBLIC
CABARRUS CO. NC
MY COMMISSION EXPIRES
JULY 26, 2017

# EXHIBIT B
### (the "Deed of Trust")

See Attached — 15 pages

DEED OF TRUST

FILED in POLK County, NC
on Apr 30 2003 at 01:17:34 PM
by SHEILA W. WHITMIRE
REGISTER OF DEEDS
**BOOK 29B PAGE  302**

**WHEN RECORDED MAIL TO:**
    Bank of America, N.A.
    NC1-014-13-07
    P.O. Box 30120
    Charlotte, NC  28254-3693

This Deed of Trust prepared by:
X _____
            Kimberly Borders 01-1141216, Document Administrator

**MAXIMUM LIEN.** The maximum principal amount secured by this Deed of Trust shall not exceed at any one time $1,312,500.00.

**THIS DEED OF TRUST** is dated April 30, 2003, among CRC Investments, LLC, whose address is 3441 Kennebuck Court, Raleigh, NC  27613 ("Grantor"); Bank of America, N.A., whose address is CCS-Small Business/Premier, NC1-014-13-07, 200 South College Street, 13th Floor, Charlotte, NC  28255 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and PRLAP, Inc., whose address is PRLAP, Inc. c/o 1400 Best Plaza Drive, Richmond, VA  23227 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** NOW, THEREFORE, as security for the indebtedness, advancements and other sums expended by the Beneficiary pursuant to this Deed of Trust and costs of collection (including attorneys' fees as provided in the Note) and other valuable consideration, the receipt of which is hereby acknowledged, Grantor has bargained, sold, given, granted and conveyed and does by these presents bargain, sell, give, grant and convey to Trustee, and Trustee's heirs or successors and assigns, for the benefit of Lender as Beneficiary, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights);

**DEED OF TRUST**
(Continued)

Loan No: 01-1141216 KSB

BOOK 298 PAGE 303    Page 2

and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Polk County, State of North Carolina:

> See Exhibit "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 85 Pine Crest Lane, Tryon, NC 28782.

To have and to hold said Real Property with all privileges and appurtenances thereunto belonging, to the Trustee, his heirs, successors and assigns forever, upon the trusts, terms and conditions and for the uses hereinafter set forth.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

> Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

> Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

> Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a

Case 21-50307   Doc 249   Filed 12/14/22   Page 21 of 35

DEED OF TRUST **BOOK 298 PAGE 304**
(Continued)

Loan No: 01-1141216 KSB                                                          Page 3

consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by North Carolina law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

DEED OF TRUST
(Continued)

**BOOK 29B PAGE 305**

Loan No: 01-1141216 KSB

Page 4

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing

DEED OF TRUST
(Continued)

**BOOK 298 PAGE 306**

Loan No: 01-1141216 KSB

Page 5

to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the

Loan No: 01-1141216 KSB

**DEED OF TRUST**
(Continued)

BOOK 298 PAGE 307

Page 6

award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**DEED OF TRUST**
(Continued)

**BOOK 29B PAGE 30B**

Loan No: 01-1141216 KSB

Page 7

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. The lien of this Deed of Trust and the security interest granted hereby will automatically attach, without further act, to all after-acquired property attached to and or used in the operation of the Property or any part thereof. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents. If such a failure is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if Grantor, after Lender sends written notice demanding cure of such failure: (a) cures the failure within fifteen (15) days; or (b) if the cure requires more than fifteen (15) days, immediately initiates steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

Loan No: 01-1141216 KSB

**DEED OF TRUST**
(Continued)

**BOOK 298 PAGE 309**

Page 8

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Express Power of Sale Provision.** Upon the application or request of Lender, it shall be lawful for and the duty of the Trustee, and the Trustee is hereby authorized and empowered, to expose to sale and to sell the Property at public auction for cash, after having first complied with all applicable requirements of North Carolina law with respect to the exercise of powers of sale contained in deeds of trust or such other sales appropriate under the circumstances; and upon any such sale, the Trustee shall convey title to the purchaser in fee simple. In the event of any sale under this Deed of Trust by virtue of the exercise of the powers granted in this Deed of Trust, or pursuant to any order and any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels and in such manner or order as Lender in its

Case 21-50307 Doc 249 Filed 12/14/22 Page 27 of 35

Loan No: 01-1141216 KSB

**DEED OF TRUST**
(Continued)

**BOOK 298 PAGE 310**

Page 9

sole discretion may elect. Trustee shall be authorized to hold a sale pursuant to North Carolina General Statute Chapter 45. If Trustee so elects, Trustee may sell the Property covered by this Deed of Trust at one or more separate sales in any manner permitted by applicable North Carolina law, and any exercise of the powers granted in this Deed of Trust shall not extinguish or exhaust such powers, until the entire Property is sold or the Indebtedness is paid in full. If such Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other security instruments, Lender may at its option exercise the remedies granted under any of the security agreements either concurrently or independently and in such order as Lender may determine.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not

prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

Rights of Trustee. Trustee shall have all of the rights and duties of Lender as set forth in this section.

POWERS AND OBLIGATIONS OF TRUSTEE. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Trustee's Fees. The Trustee's commission shall be five percent (5%) of the gross proceeds of the sale for a completed foreclosure. In the event foreclosure is commenced, but not completed, Grantor shall pay all expenses incurred by Trustee and partial commission computed on five percent (5%) of the outstanding Indebtedness, according to the following schedule: one-fourth of the commission before Trustee issues a notice of hearing on the right to foreclosure; one-half of the commission after issuance of notice of hearing; three-fourths of the commission after a hearing; and the full commission after the initial sale.

Express Power to Substitute a Trustee. Lender shall have the irrevocable right to remove at any time and from time to time without limit the Trustee named in this Deed of Trust without notice or cause and to appoint a successor by an instrument in writing, duly acknowledged, in such a form as to entitle such written instrument to be recorded in the State of North Carolina; and, in the event of the death or resignation of the Trustee named in this Deed of Trust, Lender shall have the right to appoint a successor by such written instrument, and any Trustee so appointed shall be vested with the title to the Property, and shall possess all the powers, duties and obligations herein conferred on the Trustee in the same manner and to the same extent as though the successor trustee were named in this Deed of Trust as Trustee.

NOTICES. Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

ARBITRATION. (a) This paragraph concerns the resolution of any controversies or claims between the parties, whether arising in contract, tort or by statute, including but not limited to controversies or claims that arise out

Loan No: 01-1141216 KSB

**DEED OF TRUST**
(Continued)

**BOOK 298 PAGE 312**

Page 11

of or relate to: (i) this agreement (including any renewals, extensions or modifications); or (ii) any document related to this agreement (collectively a "Claim"). For the purposes of this arbitration provision only, the term "parties" shall include any parent corporation, subsidiary or affiliate of the Bank involved in the servicing, management or administration of any obligation described or evidenced by this agreement.

(b)   At the request of any party to this agreement, any Claim shall be resolved by binding arbitration in accordance with the Federal Arbitration Act (Title 9, U. S. Code) (the "Act"). The Act will apply even though this agreement provides that it is governed by the law of a specified state.

(c)   Arbitration proceedings will be determined in accordance with the Act, the applicable rules and procedures for the arbitration of disputes of JAMS or any successor thereof ("JAMS"), and the terms of this paragraph. In the event of any inconsistency, the terms of this paragraph shall control.

(d)   The arbitration shall be administered by JAMS and conducted, unless otherwise required by law, in any U. S. state where real or tangible personal property collateral for this credit is located or if there is no such collateral, in the state specified in the governing law section of this agreement. All Claims shall be determined by one arbitrator; however, if Claims exceed $5,000,000, upon the request of any party, the Claims shall be decided by three arbitrators. All arbitration hearings shall commence within 90 days of the demand for arbitration and close within 90 days of commencement and the award of the arbitrator(s) shall be issued within 30 days of the close of the hearing. However, the arbitrator(s), upon a showing of good cause, may extend the commencement of the hearing for up to an additional 60 days. The arbitrator(s) shall provide a concise written statement of reasons for the award. The arbitration award may be submitted to any court having jurisdiction to be confirmed and enforced.

(e)   The arbitrator(s) will have the authority to decide whether any Claim is barred by the statute of limitations and, if so, to dismiss the arbitration on that basis. For purposes of the application of the statute of limitations, the service on JAMS under applicable JAMS rules of a notice of Claim is the equivalent of the filing of a lawsuit. Any dispute concerning this arbitration provision or whether a Claim is arbitratable shall be determined by the arbitrator(s). The arbitrator(s) shall have the power to award legal fees pursuant to the terms of this agreement.

(f)   This paragraph does not limit the right of any party to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or nonjudicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights, or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies.

(g)   The filing of a court action is not intended to constitute a waiver of the right of any party, including the suing party, thereafter to require submittal of the Claim to arbitration.

**COUNTERPARTS.** This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

Loan No: 01-1141216 KSB

DEED OF TRUST
(Continued)

BOOK 298 PAGE 313

Page 12

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by, construed and enforced in accordance with federal law and the laws of the State of North Carolina. This Deed of Trust has been accepted by Lender in the State of North Carolina.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of any County, State of North Carolina.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Bank of America, N.A., and its successors and assigns.

**Borrower.** The word "Borrower" means CRC Investments, LLC, and all other persons and entities signing the Note in whatever capacity.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

DEED OF TRUST
(Continued)

**BOOK 298 PAGE 314**

Loan No: 01-1141216 KSB

Page 13

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the default section of this Deed of Trust.

**Grantor.** The word "Grantor" means CRC Investments, LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower or Grantor or any other borrower, guarantor, pledgor, obligor or accommodation party is responsible under this Agreement or under any of the Related Documents, including any swap, option or forward obligations.

**Lender.** The word "Lender" means Bank of America, N.A., its successors and assigns.

**Note.** The word "Note" means the promissory note dated April 30, 2003, in the original principal amount of $1,312,500.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Loan No: 01-1141216 KSB

**DEED OF TRUST BOOK 298 PAGE 315**
(Continued)

Page 14

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means PRLAP, Inc., whose address is PRLAP, Inc. c/o 1400 Best Plaza Drive, Richmond, VA 23227 and any substitute or successor trustees.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

CRC INVESTMENTS, LLC

By: _Carl R Caudle Jr_

Carl R. Caudle, Jr., Member of CRC Investments, LLC

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF ___NORTH CAROLINA___ )
) SS
COUNTY OF ___POLK___ )

I, _Rebecca E. Elliott_, a Notary Public for said County and State, certify that Carl R. Caudle, Jr., Member of CRC Investments, LLC personally came before me this day and acknowledged the due execution of the foregoing instrument in writing by himself or herself for CRC Investments, LLC, a limited liability company, for the uses and purposes therein set forth.

Witness my hand and Notarial Seal this the ___30th___ day of ___April___, 20 __03__.

_Rebecca E. Elliott_
Notary Public

My Commission Expires:

_9-4-2007_

( Affix Notarial Seal Here )

_Rebecca E Elliott_
Notary Public/Notaries Public is/are certified to be correct. This instrument was filed for registration on the 30th of ___April___ 20 __03__ at 1:17 o'clock and recorded in this office in Book 298

Page 302

_Shila W Whitmire_
Register of Deeds

By: _Shila W___ asst

BOOK 29B PAGE 316

## EXHIBIT "A"
## LEGAL DESCRIPTION FOR DEED OF TRUST FROM CRC INVESTMENTS, LLC, GRANTOR, TO PRLAP, INC., TRUSTEE FOR BANK OF AMERICA, N.A.

BEING all of that certain tract or parcel of land, containing 9.50 acres, more or less, and being shown and delineated on that certain plat entitled, "Survey for Pine Crest Inn, Jennifer and Jeremy Wainwright, Owners, Located at Tryon, Polk County, North Carolina", dated January 18, 1990 and prepared by Wolfe & Huskey, Inc., Engineering and Surveying, said plat being duly recorded in Map Card File B, Page 42, in the Office of the Register of Deeds for Polk County, North Carolina; reference being made to said recorded plat for a full and complete metes and bounds description of said property pursuant to North Carolina General Statutes 47-30(g).

The above described property is conveyed subject to and together with a perpetual non-exclusive right of way and easement over and along Pine Crest Lane from the terminus of Pine Crest Drive running along the western boundary line of the property herein conveyed to a point where said Pine Crest Lane enters the property herein conveyed as shown on the above referenced plat.

SAVE AND EXCEPT from the above described property all of that certain tract or parcel of land, containing 0.04 acre, more or less, as described in deed recorded in Book 208, Page 2405, and shown and delineated on that certain plat recorded in Card File B, Page 331, Polk County Registry.

The above described property is the identical property conveyed by deed from Pine Crest Hospitality, LLC, to CRC Investments, LLC, dated April 30, 2003 and duly recorded herewith in the Office of the Register of Deeds for Polk County,

**EXHIBIT C**
(the "Assignment")


See Attached – 2 pages

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that a copy of the foregoing **MOTION BY PORTFOLIO HOLDINGS IV-NC, LLC FOR RELIEF FROM THE AUTOMATIC STAY** was duly served upon the following by electronic means or by depositing same enclosed in a postage paid, properly addressed envelope in a Post Office or official depository under the exclusive care and custody of the United States Postal Service:

CM/ECF

Erik Harvey          (eharvey@bennett-guthrie.com)
Attorney for Debtors

William P. Miller      (bancm_ecf@ncmba.uscourts.gov)
US Bankruptcy Administrator

Nathan Strup     (Nathan.strup@usdoj.gov)
Attorney for the Unites States of America

Paul Baynard     (paul.baynard@offitkurman.com)
Attorney for Tri C Investments, LLC

This the 14th day of December, 2022.

/s/  Daniel C. Bruton
Daniel C. Bruton